**Opinion issued November 20, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00463-CR

————————————

**FRANKLIN EDUARDO RODRIGUEZ-RUBIO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1470980**

---

## MEMORANDUM OPINION

A jury convicted appellant, Franklin Eduardo Rodriguez-Rubio, of aggravated assault and assessed punishment at 30 years' confinement. In two issues on appeal, appellant contends that the trial court erred in denying his

motions to suppress (1) the evidence recovered from his person after what he alleges was an unlawful detention or warrantless arrest, and (2) the out-of-court identifications made by two eyewitnesses.  We affirm.

## BACKGROUND

On June 6, 2015, Cynthia Chavez and her mother, Rosa, went shopping at a local shopping center.  While Rosa went into a meat market, Cynthia waited in the car.  While she was waiting, Cynthia noticed a man leaning on the trunk of the car.  Cynthia tried to call her mother but was unable to do so.  The man was making her very nervous.

Rosa soon returned to the car and was placing her purchases in the back seat when the man pulled out a gun, pointed it at her back, and told her to sit in the driver's seat.  The man stood outside the car with his hand on the roof, bending down and telling the women what he wanted them to give him.  He even leaned his head and part of his body into the car when he saw Cynthia trying to hide her cell phone.  The man took their money, Cynthia's cell phone, Rosa's cell phone, and Rosa's wallet, and then he left.

Cynthia and Rosa went to a nearby restaurant, where they borrowed a phone to call Cynthia's father, Adrian Chavez.  Using a cell phone application, Chavez was able to determine that Cynthia's cell phone was still turned on.

2

Cynthia and her mother then approached Houston Police Officer S. Calvit, who was nearby, and explained to him what had happened. They also gave Calvit a description of their assailant, which he conveyed to a dispatcher.

Officer P. Ungaro was dispatched to meet with Chavez, Cynthia's father and Rosa's husband. Chavez explained that the application showed that Cynthia's cell phone was still turned on, and Ungaro began to use the cell phone application to track the stolen phone. He soon received a "constant ping" of the cell phone at 6233 Gulfton, the Westwood Square Apartments.

Officers, including Officer E. Castillo, were dispatched to the Westwood Square Apartments in an unmarked car. They had been given the following description of the suspect: a Hispanic male, wearing a black t-shirt with white lettering, dark pants, and black shoes. The officers located a group of men drinking beer on the second floor of the apartment building, several of whom generally matched the description of the assailant. The officers approached the group, detained the men, and handcuffed them for officer safety because a weapon had been used in the offense. No one tried to run.

Officer Castillo detained appellant and placed him in handcuffs. Of all of the men detained, only appellant matched the description exactly.[1] Castillo also believed that he could arrest appellant for public intoxication. He patted down

---

[1] While the assailant had been described as wearing dark pants, Castillo said that appellant's dark shorts looked like pants because they came down to his shoes.

3

appellant's outer garments and felt a cell phone in each pocket. Castillo knew that cell phones had been taken during the robbery. He removed the cell phones from appellant's pockets and one of them matched the description of Cynthia's stolen gold and white iPhone.

The officers then took the men to a nearby Denny's restaurant for a "show-up" line-up. Rosa and Cynthia remained in a police car while the men were pulled out of a different police car. They were told that the person who committed the robbery may or may not be shown to them and that they were only to identify a suspect if they were sure it was the person who robbed them. When appellant was removed from the car, both Rosa and Cynthia identified him immediately. Officer Castillo thought appellant was the first person removed from the car, Cynthia could not recall, and Rosa thought he was the second person removed from the car. Both Rosa and Cynthia saw all of the men brought to the parking lot, but they only identified appellant.

Based on Cynthia's and Rosa's identification, as well as the fact that the stolen cell phone was recovered from his pocket, appellant was taken into custody. During a search, police recovered a third cell phone from appellant. Officers obtained a search warrant for the contents of appellant's personal cell phone and found pictures of him holding a gun that resembled the gun used in the robbery.

4

At trial, appellant filed motions to suppress the cell phones that were recovered from his pockets and the identifications of him by Cynthia and Rosa. Both motions were denied, appellant was found guilty, and this appeal followed.

## MOTIONS TO SUPPRESS

Appellant raises the following two issues on appeal:

1. The trial court erred by denying [appellant's] Motion to Suppress Evidence Obtained by Illegal Detention of the Defendant.

2. The trial court erred by denying [appellant's] Motion [to Suppress] Illegal Identification.

We address each issue, respectively.

### *Standard of Review*

We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). We afford almost complete deference to the trial court's determination of historical facts, especially the court's determinations that are based on the assessment of credibility and demeanor. *Id.*; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We conduct a de novo review of mixed questions of law and fact that do not hinge on determinations of credibility or demeanor. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *see also Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) (stating that application of legal principles to specific set of facts is issue of law that we review

5

de novo). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *Johnson*, 414 S.W.3d at 192. We will sustain the trial court's ruling if it is correct under any applicable theory of law. *Furr*, 499 S.W.3d at 877; *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013). Generally, appellate review is limited to the record at the time of the suppression hearing; however, appellate review may include evidence adduced at trial when, as here, "the suppression issue has been consensually re-litigated by the parties during the trial on the merits." *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

**Evidence Seized**

In his first issue, appellant argues that the search of his pockets was "not lawful since there was no probable cause to arrest him for aggravated robbery just because an aggravated robbery recently occurred (not at the location appellant was found) and appellant matched a very broad description of the suspect." He also contends that the search of his pockets was not justified as a "pat-down" pursuant to an investigatory detention because, under the "plain-feel" doctrine, the cell phones were not immediately identifiable as contraband. The State responds that "Officer Castillo's search of appellant was [] justified as a search incident to arrest

. . . given that [he] had probable cause to arrest appellant for aggravated robbery" at the time the cell phones were seized. We agree with the State.

Article 14.03(a)(1) of the Code of Criminal Procedure provides that "[a]ny peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . ." TEX. CODE CRIM. PROC. art. 14.03(a)(1). "Reviewing courts in Texas have consistently used the totality of the circumstances test for deciding whether an arrest is proper under Article 14.03(a)(1)." *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003). "First, probable cause that the defendant committed a felony must be found and second, the defendant must be found in a 'suspicious place.'" *Id.*

*Probable Cause*

Probable cause exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that a breach of the peace has been or is being committed. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). "The rule of probable cause seeks to accommodate the sometimes opposing interests of

safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts." *Id.* Police broadcasts that are based on probable cause and that report a felony and a description of the perpetrator satisfy the requirements for a warrantless arrest. *Law v. State*, 574 S.W.2d 82, 84 (Tex. Crim. App. 1978).

In this case, the eyewitnesses, Rosa and Cynthia Chavez, described their assailant to Officer Calvit, who in turn broadcast that description over the radio to Officer Castillo. Accordingly, Officer Castillo was aware that he was looking for a Hispanic male suspect wearing a black t-shirt with white lettering, dark pants, and black shoes. Using an application on one of the stolen cell phones that uses global position monitoring, Castillo was able to track the stolen cell phone to a nearby apartment complex. At the apartment complex, Castillo located a group of five men, all of whom generally matched the description given by Rosa and Cynthia Chavez. However, only one of the five men, appellant, matched the description exactly.[2]

_____

[2]   Officer Castillo testified about this issue as follows:

Q:  No, what color shirt are all of these men wearing
A:  Black.
Q:  Do they all have white lettering on their shirts?
A:  Yes, ma'am the majority of them.
Q:  The majority. You're speaking broadly, and I want you to speak specifically.
A:  Okay.
Q: Do they all have white lettering?
A: No.

The Texas Court of Criminal Appeals has held that radioed police broadcasts based on probable cause, reporting a felony and a description of the suspect are sufficient to satisfy the probable cause requirement. *See Guzman v. State*, 521 S.W.2d 267, 268 (Tex. Crim. App. 1975) (holding probable cause for warrantless arrest existed after victim described burglar to police, whose description was relayed to dispatcher, who broadcast it to arresting officer, who located and arrested man fitting description nearby); *see also Law*, 574 S.W.2d at 84 (holding probable cause for warrantless arrest existed after arresting officer received radio

Q: Do they all have dark, long pants on?
A: No
Q: How many of them have dark, long pants on?
A: Pants, three.
Q: Do they all have black shoes on?
A: No.
Q: So[,] when you say that they all matched exactly; is that true?
A: No. No.
Q: How many of those men matched the had [sic] description exactly.
A: One

Officer Castillo further testified:

Q: What descriptions were you given for the suspect involved in that aggravated robbery?
A: Hispanic male, black shirt with white lettering, dark pants, black shoes.
Q: And I know we hit on this previously, did [appellant], did he match that description?
A: Yes.
Q: Did he match that description just generally or did he match that description exactly?
A: Him, exactly.
Q: Now, did the other men that were there, did they match that description generally?
A: Generally, yes.
Q: Did those other men, did they match exactly like [appellant]?
A: No.

9

broadcast of description of aggravated assault suspect and car and arrested defendant, who matched description, a short time later and six miles away).

Here, Officer Castillo had more than the radio broadcast description that "exactly" matched appellant, as described by the victims to Officer Calvit. He also had information that the stolen cell phone was emitting a GPS signal from the same location. And, although appellant suggests that more than one of the five men matched the broadcast description of the assailant, that would not defeat probable cause. *See Hill v. California*, 401 U.S. 797, 802–05, 91 S. Ct. 106, 1110-111 (1971) (concluding that officers with probable cause to arrest suspect did not violate Fourth Amendment when they arrested another matching suspect's description); *see also Totten v. State*, No. PD-0483-15, 2016 WL 5118331, at *2 (Tex. Crim. App. Sept. 21, 2016) ("For probable cause purposes though, as long as the car [the police] pulled over matched the description that [the witnessing officer] provided, the car need not be the same.").

Therefore, we conclude that the police had reasonably trustworthy information that, when, considered as a whole, warranted a reasonable person to believe that appellant had committed an offense. *Guzman*, 955 S.W.2d at 87.

*Suspicious Place*

To justify a warrantless arrest under article 14.03(a)(1), the State must prove not only the existence of probable cause, but also that the defendant was found in a

10

suspicious place; very few places are suspicious per se. *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986), *overruled on other grounds*, *McKenna v. State*, 780 S.W.2d 797 (1989). A place may become suspicious, however, based on the surrounding circumstances. *Id.* The facts available to the arresting officer at the time, and reasonable inferences drawn from those facts, may render a place suspicious to invoke article 14.03(a)(1). *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); *Johnson*, 722 S.W.2d at 421. A place can be suspicious because: (1) an eyewitness or police officer connected the place to the crime; (2) a crime occurred there or the police reasonably believed a crime occurred there; (3) specific evidence directly connected the defendant or the place with the crime; or (4) appellant's behavior was a factor in determining whether a place was suspicious. *State v. Parson*, 988 S.W.2d 264, 268–69 (Tex. App.—San Antonio 1998, no pet.); *Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Although an apartment complex is not an inherently suspicious place, the fact that the GPS locator in the stolen cell phone showed that the phone and appellant, who matched the witnesses' description, were in the same location, rendered this apartment complex a "suspicious place." The "pinging" of the stolen cell phone at the apartment complex tied appellant to the crime scene. *See Goldberg*, 95 S.W.3d at 363 (holding that appellant's father's house was

"suspicious place" because car that eyewitness identified at scene was parked there and "connected the defendant to the crime scene").

Because the police officers had probable cause to arrest appellant for aggravated robbery and appellant was found in a "suspicious place," appellant's warrantless arrest was authorized by article 14.03(a)(1). Considering our holding, we need not address appellant's contention that the search was an unauthorized "plain-feel" search after an investigatory detention.

We overrule appellant's first issue.

**Out-of-Court Identification**

In his second issue, appellant complains that the trial court should have suppressed Rosa's and Cynthia's identifications of him because "[t]he show-up in question was so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process."

"[A] pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law." *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995) (citing *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967)). "[T]he admissibility of an in-court identification is determined by a two-step analysis: 1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial

likelihood of irreparable misidentification." *Santiago v. State*, 425 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "It is appellant's burden to prove the in-court identification is unreliable by proving both of these elements by clear and convincing evidence." *Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) "An analysis under these steps requires an examination of the 'totality of the circumstances' surrounding the particular case and a determination of the reliability of the identification." *Santiago*, 425 S.W.3d at 440 (citing *Barley*, 906 S.W.2d at 33). If the indicia of reliability outweighs the influence of an impermissibly suggestive pretrial identification, the identification testimony is admissible. *Santos*, 116 S.W.3d at 451.

Appellant claims that the show-up was impermissively suggestive because: (1) both Rosa and Cynthia were in the same car when they identified appellant; (2) Rosa may have had a language barrier; (3) Rosa and Cynthia were told they were going to view someone who may have been involved in the offense, and (4) appellant was the only suspect shown to the complainants.

However, we need not address whether appellant has demonstrated that the show-up identification was impermissibly suggestive because we conclude that he has not established that the show-up identification procedure "gave rise to a very substantial likelihood of irreparable misidentification." *See, e.g., Santos*, 116

S.W.3d at 451 (recognizing appellant's burden to demonstrate both that out-of-court identification procedure was unduly suggestive and likely caused a misidentification).

"The non-exclusive factors that we consider include: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the time of confrontation; and (5) the length of time between the offense and the confrontation." *Nunez–Marquez v. State*, 501 S.W.3d 226, 235 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Application of these factors does not demonstrate a likelihood of misidentification of the appellant.

*Opportunity to view the assailant*

The trial court found, and the record supports a finding that, Cynthia "was within arm's length of the defendant for ten to fifteen minutes," and that Rosa "was able to see [appellant] face-to-face during the offense for approximately 15 minutes. Cynthia testified that it was daylight, and she had an unobstructed view of appellant's face because he was "two steps away." Cynthia further testified that, during the offense, appellant "got his head, half his body inside [the car]," as he leaned over her mother, who was in the driver's seat. Rosa also testified that nothing covered the assailant's face and that she got a good look at him. She was

able to see his face and he was close enough to touch her when he leaned half his body in her car.

*Degree of attention*

The trial court found, and again the record supports a finding that, Cynthia "paid a high degree of attention to the defendant during the incident." Cynthia testified that nothing distracted her from appellant, who was holding a gun on her and her mother. Also, the trial court found that Rosa "paid a high degree of attention during the offense," and based on her attention, she was able to provide an accurate description of the assailant.

*Accuracy of prior description*

The trial court found that Cynthia "provided an accurate description of the suspect's clothing and the defendant was apprehended while wearing the same clothing described by [Cynthia]." The trial court also found that Rosa "provided an accurate description of the defendant." Both gave information to police that the assailant was wearing a black shirt with white letters, dark pants, and black shoes. Appellant was arrested wearing clothes that matched this description. Both accurately described him as Hispanic, with short dark hair. Cynthia testified that appellant sounded like he was from El Salvador because she had friends from El Salvador and recognized the accent. Appellant was indeed El Salvadoran. Although when Cynthia testified *at trial* that the assailant had no facial hair, it is

15

her prior description, not her description at trial, that is relevant to this analysis. *See Nunez–Marquez*, 501 S.W.3d at 235 (noting that third factor is "the accuracy of the witness's prior description of the criminal").

*Witnesses' level of certainty*

The trial court found that Cynthia "was sure that the person she saw during the show-up was the same person who robbed her." She testified that she did not hesitate at all when she saw appellant, and that she would not have identified anyone if she had not recognized him because she did not think that "would be fair." At trial, Cynthia testified, "I don't quite remember if they was [sic] first, second, or third. I don't remember; but when I saw him, I was sure that was him." After identifying appellant, Cynthia saw the other men brought to the show-up and she was confident that none of them were the robber. The trial court also found that Rosa had a high degree of certainty when she identified appellant as the person who robbed her. Rosa testified that when the police pulled several men out of the police car, appellant was the second one and she recognized him immediately. She testified that she recognized his face and clothes, saying, "I was sure."

*Length of time between offense and confrontation*

The trial court found that "[l]ess than two hours passed between the time that [Cynthia] observed appellant during the robbery and the time when she identified him at the show-up." While Rosa estimated that it was about four to five hours

before she identified appellant at the show-up and stated that it "felt like a long time," the trial court, as factfinder, was entitled to believe Cynthia's testimony that it was only "two hours."

We conclude that, even if we assume without deciding that the pre-trial show-up identification procedure used in this case was impermissibly suggestive, the totality of the circumstances demonstrates that this procedure did not give rise to a "substantial likelihood of irreparable misidentification." *See Gamboa v. State*, 296 S.W.3d 574, 581–82 (Tex. Crim. App. 2009).

We, therefore, hold that the trial court did not err in denying appellant's motion to suppress the pre-trial, show-up identifications, as well as the subsequent in-court identifications.

Accordingly, we overrule issue two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).