Jose J. SANTIAGO, Appellant

v.

The STATE of Texas, Appellee.

No. 01–09–00723–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 17, 2011.

**438**

Anne E. Kennedy, Kennedy & Taylor, LLP, Houston, TX, for Appellant.

Jessica A. Caird, Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

A jury convicted appellant Jose J. Santiago of the felony offense of aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03(a)(2) (West 2011). The jury assessed punishment at 37 years in prison. Santiago argues that the trial court erred by admitting identification evidence, and he challenges the legal sufficiency of the evidence to support his conviction. We affirm.

### Background

Abid Ali was leaving his house around 5:30 a.m. to go to work when four armed men confronted him. The men were later identified as Jose Zuniga Castaneda, Jorge Enrique Martinez, Teodoro Robles, and Jose Santiago. The four men ordered Ali back into his house where they bound his hands with duct tape. They held him in the kitchen for several minutes, threatened to kill him, and took his jewelry and money. Three of the four intruders—Santiago, Robles, and Castaneda—then went upstairs while Martinez remained downstairs with Ali.

Ali's wife and three children were sleeping upstairs. The intruders bound his wife's arms, legs, and mouth with duct tape. An adult son was awakened, brought to his mother's room at gunpoint, placed face-down on the floor, and bound by his feet and hands. Ali was brought upstairs and into the bedroom, followed by his 11–year–old son, who also was brought into the room at gunpoint. The Alis' daughter called 9–1–1 and reported the intrusion, before Castaneda entered her room and brought her at gunpoint to join the rest of her family. At this time, all of the intruders were present in the room.

The family remained in the room for seven to ten minutes while the intruders demanded money. The men forced Ali to open his safe, and they took all of the jewelry stored inside it. At trial, Ali testified that all four men pointed guns at him during the robbery, and he specifically testified that Santiago had a gun during the encounter. The Alis all repeatedly testified that they feared for their lives, that the four men threatened to kill them, and that they stole money and jewelry. At some point during the robbery, Santiago left the room and went downstairs.

Approximately 15 minutes after initially entering the house, Santiago yelled "policia" from downstairs, warning the others that the police had arrived. Officer A. Daugherty arrived first on the scene and saw three men fleeing out the back door, but he did not see a fourth man leave. Once the officers arrived on the scene and cleared the house, they separated the members of the Ali family and told them not to discuss the incident with one another.

Officer D. Oldner was the second officer to arrive on the scene, and he testified that he found Santiago in a car two blocks away from the Alis' home. Oldner noticed Santiago's car rolling from a parked position with its lights turned off. Santiago turned the lights on and continued driving, but Oldner shined a spotlight on him and recognized him as matching the description of one of the suspects. Oldner activated his emergency lights to initiate a traffic stop, but Santiago sped away. Santiago then jumped from the car, and Oldner chased him on foot, eventually using a taser to stop him.

Santiago was charged with aggravated robbery. Before trial, Santiago moved to exclude any in-court identification by Ali.

The trial court denied the motion based on Ali's identification of Santiago at the pretrial hearing. The jury found Santiago guilty of aggravated robbery, and this appeal ensued.

## Analysis

### I. Admissibility of in-court identification

In his first issue, Santiago contends that he was denied due process when the trial court admitted Abid Ali's in-court identification of him as one of the robbers. Santiago argues that Ali's prior out-of-court identification was based on impermissibly suggestive procedures and thus tainted Ali's subsequent in-court identification.

■ "[A] pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law." *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim.App.1995) (citing *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). Santiago contends that "an in-court identification must be predicated upon a reliable pre-trial out-of-court identification" and that "identification testimony is unreliable if a witness failed to identify the defendant at [an] identification procedure prior to [the] challenged identification," but these assertions do not inform our legal analysis of the admissibility of Ali's testimony identifying Santiago as one of the robbers. To the contrary, eyewitnesses to a crime are commonly permitted at trial to identify a defendant as the perpetrator, without any requirement of a prior out-of-court identification. The authorities relied upon by Santiago do not suggest otherwise.[1]

---

1. For the proposition that "an in-court identification must be predicated upon a reliable pre-trial out-of-court identification," Santiago relies upon *Neil v. Biggers*, 409 U.S. 188, 93

Instead, the admissibility of an in-court identification is determined by a two-step analysis: "1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification." *Id.* at 33 (footnote omitted). "An analysis under these steps requires an examination of the 'totality of the circumstances' surrounding the particular case and a determination of the reliability of the identification." *Id.* We review the trial court's factual findings deferentially, but we review de novo the trial court's legal determination of whether the reliability of an in-court identification has been undermined by an impermissibly suggestive pretrial identification procedure. *See, e.g., Loserth v. State,* 963 S.W.2d 770, 773–74 (Tex.Crim.App.1998).

There are four pretrial episodes relating to Ali's testimony and Santiago's allegations of suggestive identification procedure: (1) Ali's observation of the intruders in his home during the robbery; (2) his response to seeing Santiago in a police car shortly after the robbery took place; (3) a photographic lineup; and (4) Ali's identification of Santiago in court at the pretrial hearing on the identification issue. We will review each of these episodes, based on evidence provided at a pretrial hearing and during Ali's testimony at trial, all under the appropriate standard of review as described above.

*The robbery.* The evidence shows that Ali had an opportunity to see Santiago during the crime and that he paid attention to the events as they unfolded. At the time of the robbery, Ali saw the faces of the four robbers in a lighted area near his garage when they approached him with guns. He also saw them in his kitchen where the light was bright enough for him to see them for two to three minutes. He testified that he was "able to get a good look at their faces" in the light of both the patio and the kitchen, and he specifically testified that he remembered seeing Santiago going upstairs. He also saw the men in the upstairs bedroom during the 15– to 20–minute robbery. Based on this evidence, the trial court specifically found

S.Ct. 375, 34 L.Ed.2d 401 (1972), *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Sam v. State,* 771 S.W.2d 210 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). For the proposition that "identification testimony is unreliable if a witness failed to identify the defendant at [an] identification procedure prior to [the] challenged identification," he relies on *Herrera v. State,* 682 S.W.2d 313 (Tex.Crim.App.1984), and *Hasker v. State,* 725 S.W.2d 443, 445 (Tex.App.-Houston [1st Dist.] 1987, no pet.). Each of these cases dealt with the effect of an allegedly suggestive pretrial identification, but none supports Santiago's argument that due process requires that a witness identify a defendant out of court before he can do so in court. *See Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253 (reversing court of appeals decision ordering habeas relief based on admission of identification resulting from suggestive and unnecessary procedure while emphasizing that "reliability is the linchpin in determining the admissibility of identification testimony"); *Biggers,* 409 U.S. at 201, 93 S.Ct. at 383 (identification was admissible due to reliability of witness despite the fact that "the victim made no previous identification at any of the showups, lineups, or photographic showings"); *Herrera,* 682 S.W.2d at 318 ("[I]n-court identification will only be inadmissible if the State fails to show by clear and convincing evidence that the identification is not tainted"); *Sam,* 771 S.W.2d at 211 ("Even if the identification procedure is suggestive and unnecessary, the admission of the identification testimony does not violate due process if the identification is 'sufficiently reliable.'"); *Hasker,* 725 S.W.2d at 445 ("There is no reversible error due to a substantial likelihood of misidentification, when there was a distinct observation at the time of the event which, in light of the surrounding circumstances, can be considered credible enough to serve as an independent origin for the in-court identification.").

that Ali "did have the opportunity to see the people coming inside."

*The show-up.* After responding to the scene of the crime, Officer Daugherty had instructed the family to remain separated and not to discuss the robbery. Within a couple of hours, Officer Castleberry gave Ali an opportunity to identify Santiago after he was captured near the scene. Each of the three captured suspects was placed in a separate patrol car by himself. There is no evidence that that the Alis collaborated in their identifications, that they saw the men in handcuffs, or that any of the officers expressly suggested these were the robbers. Ali testified at trial that he identified "all three" of the men shown to him, though he also testified with respect to Santiago: "At that time I wasn't sure, so I said I'm not sure at that time."

*The photographic line-up.* Santiago contends that an impermissibly suggestive photographic line-up conducted during the course of the police investigation tainted Ali's subsequent in-court identifications. He argues that Ali failed to identify him in a photographic line-up prior to trial. Ali testified that he did not remember being shown pictures of Santiago. The police officer who prepared the photographic line-up testified that he included photographs of Castaneda, who had escaped the scene of the robbery, but he did not include a picture of Santiago.

*The pretrial hearing.* Finally, at the pretrial hearing on Santiago's motion to exclude in-court identifications of him, Ali testified that although he was not sure about his identification on the day of the robbery, "now I see him in the court, I recognize him now more than at that time. . . . I can go back and the more I look at him, the more I'm getting sure that he was the one who also was there. . . ." It was at this hearing that Ali first testified to the details about his observations of Santiago at the time of the robbery and the subsequent events of the show-up identifications. As a result of this hearing, the trial court ruled that the out-of-court show-up identification was not improper. The trial court also denied Santiago's motion to exclude Ali's identification testimony at trial based on the identification at the pretrial hearing.

Santiago challenges the show-up identification, the photographic line-up, and the pretrial in-court identification as being impermissibly suggestive. This step of the analysis embraces both the suggestiveness of the procedure[2] and the justification for its use.[3] *See Barley,* 906 S.W.2d at 33 (holding "that the procedures utilized might have been suggestive, but not *impermissibly* so"). Such a challenge can succeed only when clear and convincing evidence shows that improper pretrial identification procedures and confrontations tainted the in-court identification. *See Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App.1993). The State contends that Santiago failed to establish by clear and convincing evidence that Ali's in-court identification was tainted by an impermissibly suggestive pretrial procedure, and

**2.** *See, e.g., Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App.1993) (impermissibly suggestive to show only one photograph to witness, "presented to her as the person who was in custody, under indictment, for the murder of her husband").

**3.** *See, e.g., Cantu v. State,* 738 S.W.2d 249, 252 & n. 1 (Tex.Crim.App.1987) (suggestiveness of showing witness "several arrays on different occasions, all containing appellant's photograph" must be considered in light of circumstances which might make such procedure necessary, such as when police "are certain a witness recognizes a suspect but fears to identify his photograph").

therefore we need not consider the likelihood of misidentification.

■ The initial show-up procedure at the crime scene was not shown to be impermissibly suggestive, as such confrontations have been acknowledged as being necessary in many cases. *See Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App. 1981); *see also Fite v. State*, 60 S.W.3d 314, 318 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *Louis v. State*, 825 S.W.2d 752, 756–57 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd); *Jackson v. State*, 682 S.W.2d 692, 695 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd). As explained by the Court of Criminal Appeals,

> First of all by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate. Additionally the quick confirmation or denial of identification expedites the release of innocent suspects. Thus the innocent suspect need not be transported to jail and detained until a lineup can be constructed. Furthermore the police would be able to release the innocent suspect and continue their search for the criminal while he is still within the area and before the criminal can substantially alter his looks and dispose of evidence of the crime. Finally, any possible prejudice resulting from such a confrontation can be exposed by rigorous cross-examination of the witness.

*Garza*, 633 S.W.2d at 512 (citations omitted). All of these considerations apply to the circumstances of the show-up procedure used in this case, when the show-up was conducted within hours of the robbery. Santiago has not shown by clear and convincing evidence that there was any abuse of the procedure. The evidence showed that Santiago was not seen in handcuffs,

the police did not state that he was considered a suspect, and, at the scene, the Alis did not discuss whether Santiago was one of the men who had entered their home. Moreover, the trial court could have concluded that the in-court identification of Santiago was not tainted by the show-up procedure because Ali admitted at the pretrial hearing that he was not sure about identifying Santiago at the time, yet he indicated that his identification of Santiago was based on seeing him in the courtroom and his memory of the robbery.

With respect to the photographic line-up, the evidence presented at the pretrial hearing and at trial affirmatively showed that no photographic line-up including Santiago was ever shown to Ali. Rather, the only photographic line-up that Ali viewed in connection with this case included a picture of Santiago's coconspirator, Castaneda. In the absence of evidence that Ali was shown a photographic line-up including Santiago, we view the disputed facts in the light most favorable to the trial court's ruling and conclude that Santiago was not included in any pretrial photographic line-up that could have undermined the reliability of Ali's subsequent identifications.

Finally, Santiago relies upon the circumstances of the pretrial hearing itself as being impermissibly suggestive. But Santiago offers no authority suggesting that an evidentiary hearing on a motion to suppress can itself constitute an impermissibly suggestive identification procedure depriving him of due process. The record reflects no objection to the hearing proceeding with Ali and Santiago both present in the courtroom. The only arguments and authorities offered to the trial court suggested that if an in-court identification is the fruit of an improper pretrial identification, it must be excluded unless the State proves by clear and convincing evidence

that the in-court identification is based on an independent source.[4] *See United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967); *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim.App.1983). Accordingly, to the extent that Santiago contends on appeal that the pretrial hearing on his motion to suppress was itself an inappropriately suggestive environment for him to be identified by the complainant, we conclude that this argument does not comport with the objection at trial and therefore has been waived. *See* TEX.R.APP. P. 33.1(a).

Considering the totality of the circumstances, Santiago has not identified an impermissibly suggestive out-of-court identification procedure that could have tainted the subsequent proceedings in the case. *See Barley*, 906 S.W.2d at 33. We overrule Santiago's first issue.

## II.  Legal sufficiency

■ In his second issue, Santiago challenges the sufficiency of the evidence to support his conviction for aggravated robbery. We review the legal sufficiency of evidence to support a criminal conviction to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.

App.1991). The jury, which heard testimony from the complainant, was in the best position to weigh the evidence, and on appeal the court will defer to the jury's assessment of credibility under these circumstances. *See Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997).

■ A person is guilty of aggravated robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03(a)(2) (West 2011). Santiago does not argue that the evidence is inadequate to demonstrate that the crime of aggravated robbery was committed. Instead, he contends that there is no credible evidence connecting him to the other robbers.

■ A conviction may be based on the testimony of a single eyewitness. *Davis v. State*, 177 S.W.3d 355, 359 (Tex.App.- Houston [1st Dist.] 2005, no pet.). Ali testified that four men, including Santiago, forced him into his house and robbed him and his family at gunpoint. Specifically, Ali testified that Santiago held a gun to him. The Alis testified that they feared for their lives during the encounter and that all four men threatened to kill them while demanding and taking money and jewelry.

Santiago contends that the evidence was insufficient because the State introduced no forensic evidence connecting him to the scene of the crime. However, the State

4.  The authorities contained in Santiago's written motion to suppress included *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Dispensa v. Lynaugh*, 847 F.2d 211 (5th Cir.1988), *Holloway v. State*, 691 S.W.2d 608 (Tex.Crim.App.1984), *cert. granted and judgment vacated on other grounds*, 475 U.S. 1105, 106 S.Ct. 1508, 89

L.Ed.2d 908 (1986), *Thompson v. State*, 480 S.W.2d 624 (Tex.Crim.App.1972), and *Martinez v. State*, 437 S.W.2d 842 (Tex.Crim.App. 1969). None of these opinions considered whether a pretrial hearing can itself be impermissibly suggestive of the defendant's identity so as to require exclusion of a witness's identification at the hearing.

presented evidence which demonstrated that Santiago could not be excluded as a contributor to a mixture of DNA found on one of the gloves found near the scene. Based on the forensic and other evidence at trial, including Ali's eyewitness testimony, a rational jury could have concluded that Santiago was one of the robbers. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. The lack of additional forensic evidence does not render the evidence of his guilt legally insufficient. *See Johnson v. State,* 176 S.W.3d 74, 77–78 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (holding that lack of forensic evidence will not overturn guilty verdict based on insufficiency of evidence where other evidence connects defendant to crime).

In addition, when evaluating the sufficiency of evidence to establish aggravated robbery with a deadly weapon, guilt may be reasonably inferred when the defendant's actions, including flight, demonstrate a consciousness of guilt. *See Foster v. State,* 779 S.W.2d 845, 859 (Tex.Crim. App.1989). "Flight is no less relevant if it is only flight from custody or to avoid arrest." *Id.*

Officer Oldner testified that after arriving at the scene of the crime, he saw Santiago in a car, parked in front of the Alis' home, drive away with no headlights on although it was still dark. He testified that after he spotlighted the car, Santiago's eyes became "real wide" as he saw the officer, and he turned the corner. Rather than stop when the officer attempted to initiate a traffic stop, Santiago sped up, and he jumped from the moving vehicle, causing the officer to pursue him on foot. Santiago unsuccessfully attempted to jump over a fence before the officer used his taser to stop him.

Viewing all the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found that Santiago was guilty of aggravated robbery. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. We therefore hold that the evidence is legally sufficient to support the jury's verdict, and we overrule Santiago's second issue. *See id.*

### Conclusion

We affirm the trial court's judgment.

Justice SHARP, concurring in the judgment.