**Opinion issued October 25, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00296-CR

————————————

**JAMES TINSLEY, IV, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1468641**

---

## MEMORANDUM OPINION

A jury convicted appellant James Tinsley, IV of capital murder. TEX. PENAL CODE § 19.03(a)(7). Before trial, Tinsley unsuccessfully moved to suppress an adverse witness's pretrial and in-court identifications. On appeal, he argues that the

trial court improperly admitted the identifications by concluding that the photo-array procedure employed by police was not impermissibly suggestive. But because the trial court properly exercised its discretion in concluding that the pretrial identification was not the result of impermissibly suggestive procedures, we affirm.

## Background

A man gunned down three members of the Contreras family in the office of their used-car dealership, Immaculate Auto Sales. Surveillance footage showed that a black man wearing a flat-brimmed hat and glasses entered the business and started shooting less than a minute later. Brothers Tony and Jesus Contreras died at the scene. Casey, Tony's 22-year-old son, was mortally wounded but still alive when the gunman poured gasoline on him and around the office. The gunman unsuccessfully tried to set the office ablaze before giving up and leaving through the front door.

Minutes later an Immaculate Auto Sales employee, Mauricio Grimaldo, returned from an errand and found the three Contreras men. He promptly called 911. While on the phone, Grimaldo saw a law enforcement officer driving by the business. He ran outside to flag down the officer but was unsuccessful. He turned to walk back into the business and noticed a black man crossing the street towards him. The man was wearing jeans, a khaki-colored jacket, and a flat-brimmed baseball hat. The man was about thirty to forty feet from Grimaldo when their eyes met. Grimaldo

"took as good a look" as he could at the man and was particularly surprised by the "part around his eyes." The man immediately turned and ran in the opposite direction.

Police arrived and secured the area shortly after Grimaldo's encounter with the man on the street. Casey was taken to the hospital, where he later died. Grimaldo told the police about the man he saw crossing the street, but they could not locate him. A few weeks passed, and the case went cold.

About four months after the shooting, Arion Banks-Stewart called police and reported that her ex-boyfriend, appellant James Tinsley, IV, told her that he was the shooter. Banks-Stewart stated that she and Tinsley had purchased a vehicle from Immaculate Auto Sales that was later repossessed after Tinsley lost his job and the couple fell behind on payments. After an in-person meeting with Banks-Stewart, Detective Waters created a photo array that contained six driver's-license photographs of different men, one of whom was Tinsley. All of the men depicted were black men of the same general size and build, all had similar hairstyles and complexions, and all wore earrings.

The photo array was shown to Grimaldo by Detective Brian Harris, who had no involvement in the photo array's creation and who had no knowledge of who Tinsley was or where he appeared in the photo array. Before showing the array to Grimaldo, Detective Harris explained that the shooter may or may not be depicted

in the array, that he was not required to identify anyone, and that it was as important to eliminate the innocent as it was to identify the shooter. Grimaldo stated that he understood Detective Harris's explanation.

Detective Harris stated that Grimaldo looked at the array for about twenty seconds before indicating that the person he saw on the street was wearing a flat-brimmed hat. The detective then drew a straight line across each head in the photo array, in numerical order, to simulate a hat. Then he drew on glasses in the same order. He returned the array to Grimaldo, who then identified Tinsley as the man he saw outside of Immaculate Auto Sales. Grimaldo said that he was "90 percent sure" that Tinsley was the man he saw, but that the drawn-on glasses did not help. Detective Harris then explained that the person in the surveillance video was wearing glasses, and he asked Grimaldo if he was sure the person he saw outside Immaculate Auto Sales was not wearing glasses. Grimaldo confirmed his account. Two days later, the State charged Tinsley with capital murder.

Before trial, Tinsley moved to suppress Grimaldo's pretrial and in-court identifications. The trial court held a hearing and denied the motion, reasoning that the officers did nothing "that was impermissibly suggestive" and that Grimaldo selected Tinsley's photograph because of "what he believed to be his observations of the person that he saw on the day in question," not because of anything the officers said.

4

Tinsley appeals.

## Analysis

Tinsley argues that the trial court abused its discretion by failing to suppress Grimaldo's pretrial and in-court identifications. He maintains that the photo array was impermissibly suggestive and tainted Grimaldo's later in-court identification.

A defendant is denied due process of law when an in-court identification is precipitated by an impermissibly suggestive pretrial identification. *Balderas v. State*, 517 S.W.3d 756, 796 (Tex. Crim. App. 2016), *cert. denied*, 137 S. Ct. 1207 (2017). A two-step analysis guides our review. First, we examine the totality of the circumstances surrounding the pretrial identification and ask whether the procedure employed was impermissibly suggestive. *Id.* at 792. If it was impermissibly suggestive, we then ask whether that suggestive procedure "gave rise to a very substantial likelihood of irreparable misidentification." *Id.* at 796. In conducting this analysis, we deferentially review the trial court's factual findings but review de novo the legal determination of whether a suggestive pretrial identification undermined a subsequent in-court identification. *Santiago v. State*, 425 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Tinsley contends that Detective Harris's act of drawing a hat and glasses on the men in the photo array resulted in an impermissibly suggestive identification because the drawings "clearly conveyed to Grimaldo that the person they were

5

looking for was portrayed in the array." But a lineup is not rendered unnecessarily suggestive "simply because the complainant is told that it contains a suspect, because a complainant would normally assume that to be the case." *Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992). Accordingly, even if Detective Harris's drawing on the photo array suggested to Grimaldo that the array contained a suspect, Tinsley has failed to meet his burden on appeal to establish that the identification was impermissibly suggestive. Because a conclusion "that a challenged pretrial identification was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification," *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988), our analysis stops here. *See Balderas*, 517 S.W.3d at 792. We overrule Tinsley's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

6