# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-23-00309-CR

---

**Devin Mendez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 424TH DISTRICT COURT OF BLANCO COUNTY
NO. CR01912, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found Devin Mendez guilty of the felony offenses of aggravated robbery, *see* Tex. Penal Code § 29.03; tampering with physical evidence, *id.* § 37.09(c); unlawful possession of a firearm by a felon, *id.* § 46.04(a); and theft of a firearm, *id.* § 31.03(e)(4)(C). In one point of error, Mendez challenges the trial court's denial of his motion for directed verdict. He contends that the evidence of identity was legally insufficient to sustain his conviction for aggravated robbery. Because we conclude that the evidence was legally sufficient, we affirm the trial court's judgments.

## BACKGROUND

In July 2020, Alex Thompson and Mason Maloy were employed at Peterson Tire, and Thompson lived with Sierra Martinez and their children in a house directly across the street from Peterson Tire.

After Peterson Tire had closed for the evening on July 24, 2020, Thompson and Maloy were on the front porch of Thompson's house. They noticed a silver Chrysler and another vehicle pull into the driveway of Peterson Tire and a man get out of the Chrysler. The man started "shifting through the driver's door" of Thompson's truck, which was parked at Peterson Tire. Around that time, Martinez returned home in her vehicle, and Thompson drove her vehicle across the street. When he arrived at Peterson Tire, the man was rummaging through the inside of a truck that belonged to James Mowery, a regular customer at the shop. Thompson confronted the man, and the man pulled out a firearm and pointed it at Thompson. Thompson retreated to his vehicle and drove away.

After Thompson drove away, the Chrysler and the other vehicle drove away in the same direction as Thompson had gone. Martinez and Thompson both called 911 and reported the incident. Thompson also began following the Chrysler and relaying the Chrysler's location to the dispatcher. In under ten minutes, the police initiated a traffic stop of the Chrysler. Mendez's girlfriend at the time was driving the Chrysler, and he was sitting in the front passenger seat. There were no other occupants. The police arrested Mendez, who was wearing black clothing and a face mask, and transported him to jail. Based on information that his girlfriend provided, the police located a firearm, as well as a bag of marijuana, on the side of the road on the route the Chrysler had been traveling. They also found a Mercedes key on the Chrysler's front passenger side. The Mercedes key and firearm belonged to Mowery and were in his truck at Peterson Tire prior to the incident. Mendez was indicted on four counts: aggravated robbery (Count I), tampering with physical evidence (Count II), unlawful possession of a firearm by a felon (Count III), and theft of a firearm (Count IV).

2

The jury trial occurred in April 2023. The State's witnesses included responding officers, Thompson, Maloy, Mowery, Martinez, and Mendez's girlfriend. Thompson, Maloy, and Martinez testified about what they observed during the incident, and the exhibits included the 911 calls by Thompson and Martinez, photographs including of an image of Mendez sitting in the backseat of the police car after his arrest, and a video recording that Martinez took with her phone that captured the portion of the incident where the man is pointing the firearm at Thompson's vehicle as Thompson gets in the vehicle and then drives away. In the 911 calls, Martinez reported that a person just pulled a gun on her boyfriend and drove away in a silver Chrysler, and Thompson also reported that a man had just pulled a gun on him.

The undisputed evidence established that: (i) the Chrysler and another vehicle pulled into Peterson Tire after it was closed on the evening of July 24, 2020; (ii) a man wearing dark clothing and a face mask got out of the Chrysler and began rummaging through Thompson's vehicle and then moved on to Mowery's truck; (iii) a firearm and a Mercedes key were taken from Mowery's truck without his permission; (iv) the man who was rummaging through the vehicles had a confrontation with Thompson and pointed the firearm at Thompson; (v) after Thompson retreated and drove away, the Chrysler and the other vehicle drove away in the same direction; (vi) Thompson followed the Chrysler and provided updates on its location; and (vii) Mendez, wearing black clothes and a face mask, was in the Chrysler's front passenger seat when the traffic stop was initiated less than 10 minutes later.

Mendez's primary defense at trial was that the State failed to prove that he was the man who committed the robbery, and he attacked the credibility of his girlfriend's testimony. During cross-examination, his girlfriend admitted to being untruthful when speaking with the police after the traffic stop. At that time, she told the police that her brother was in the other

3

vehicle, but she admitted at trial that this statement was not true and testified that the occupants in the other vehicle were Mendez's friend and his girlfriend. She also told the police that she was pregnant but admitted at trial that that statement had not been true.

As to the eyewitness testimony, Thompson, Maloy, and Martinez described their observations of what happened and the man involved in the incident, such as what he was wearing, and confirmed that the man pointed the firearm at Thompson, but they did not directly identify Mendez as the man involved in the incident. Mendez's girlfriend testified that she was looking at her phone after Mendez got out of the Chrysler, but she identified Mendez as the man pointing the firearm at Thompson's vehicle in a cell phone image taken during the incident and testified that "at some point" during the incident, she observed Mendez pointing a gun at one of the people who had been yelling at him.

Mendez's girlfriend testified that: (i) she and Mendez were the only occupants in the Chrysler when they pulled into Peterson Tire and after they drove away on July 24, 2020; (ii) they were travelling with the other vehicle, which was occupied by Mendez's friend and the friend's girlfriend; (iii) she was driving and pulled over at Peterson Tire because Mendez told her he needed to go to the bathroom; (iv) the other vehicle pulled over behind them; (v) after Mendez got out of the car, she began looking at her phone until she heard people yelling and coming across the street toward them; (vi) around that time, Mendez got back into the Chrysler and told her to "go" and "[d]on't stop"; (vii) when he returned to the Chrysler, Mendez had a Mercedes key and a firearm that he did not have when he got out of the Chrysler; and (viii) he

4

was "waving" the gun "around" in the Chrysler and then threw it out the window before the traffic stop.[1]

At the close of the State's case-in-chief, Mendez moved for a directed verdict. The trial court denied the motion, and Mendez rested without presenting further evidence. The jury found him guilty of the four counts, and the trial court made an affirmative deadly weapon finding. Following the trial's punishment phase, the trial court assessed the following punishments: 30 years' confinement for Count I, aggravated robbery; 10 years' confinement for Count II, tampering with physical evidence; 10 years' confinement for Count III, unlawful possession of a firearm by a felon; and two years' confinement for Count IV, theft of a firearm, with each sentence to run concurrently.[2]

Consistent with the jury's verdict and its assessed punishments, the trial court signed the judgments of conviction. Mendez filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## ANALYSIS

In his sole point of error, Mendez contends that the trial court erred by denying his motion for a directed verdict.

---

[1] As to the bag of marijuana that the police found along the route that the Chrysler traveled, Mendez's girlfriend testified that she was unaware that Mendez had marijuana but confirmed that a backpack in the Chrysler belonged to Mendez, and a detective testified that the backpack contained "flakes of marijuana."

[2] Counts I and II were enhanced with a prior felony conviction. At trial, the parties entered into stipulations concerning Mendez's prior felony conviction.

**Standard of Review**

The standard of review applicable to a motion for a directed verdict is the same as that used in reviewing the legal sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). If the evidence is sufficient to sustain the conviction, then the trial court did not err in overruling appellant's motion for a directed verdict. *Id*. In determining the sufficiency of the evidence to support a conviction, we must decide after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). We "consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. And "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "alone can be sufficient to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We also are mindful that "[t]he jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses" and "can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial." *Stahmann*, 602 S.W.3d at 577. The jury is also "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012) (citing *Jackson*, 443 U.S. at 326).

**Evidence of Identity**

Mendez argues that the trial court erred by denying his motion for a directed verdict because the evidence was legally insufficient to sustain his conviction of aggravated robbery. In Count I of the indictment, Mendez was charged as follows:

> DEVIN MENDEZ, hereinafter referred to as Defendant, on or about the 24th day of July, 2020, and before the presentment of this indictment, in the County of Blanco, and the State of Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Alexander Thompson, in fear of imminent bodily injury or death, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm.

*See* Tex. Penal Code §§ 29.02(a) (stating elements of robbery), .03(a)(2) (stating that person commits aggravated robbery when person commits robbery and uses or exhibits a deadly weapon);[3] *see also id.* § 1.07(a)(17) (defining deadly weapon to include firearm).

Mendez does not appear to contest that the evidence proved that an aggravated robbery occurred at Peterson Tire. His challenge is to the legal sufficiency of the evidence "to establish his identity as the person who robbed the alleged victim." Mendez contends that "the State's evidence on the question of the identity of the person who robbed Mr. Thompson is insufficient to show [his] guilt." He argues that "the State failed to prove his identity as the robber who wielded the firearm in the case," that "[n]o witness at trial was able to directly identify [him] as the robber," and that "the evidence was purely circumstantial." He relies on the evidence that one or more other individuals were in the immediate vicinity of the robbery, focusing on the occupants of the other vehicle that included at least one male, inconsistencies in

---

[3] A person commits aggravated robbery if, (1) in the course of committing theft, and (2) with intent to obtain or maintain control of property, (3) he knowingly or intentionally (4) threatens or places another in fear of imminent bodily injury or death, and (5) uses or exhibits a deadly weapon. Tex. Penal Code §§ 29.02(a), .03(a)(2).

the eyewitnesses' testimony about what they observed, and the lack of "any fingerprint or DNA evidence, evidence that the State could have taken the pains to acquire for this case."

As support for his position, Mendez also contrasts the evidence in this case with evidence in other cases in which the evidence of identity was challenged and found sufficient to support an aggravated robbery conviction. *See Price v. State*, 502 S.W.3d 278, 281–82 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding that evidence was legally sufficient to establish that defendant committed aggravated robbery when victim made direct identification of defendant and other evidence linked defendant to robbery); *Santiago v. State*, 425 S.W.3d 437, 443–44 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding that evidence was legally sufficient to establish that defendant committed aggravated robbery when witness identified defendant as one of robbers and there was DNA evidence linking defendant to robbery). The analysis in those cases, however, is not inconsistent with our analysis here.

"Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence." *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) (citing *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009)); *see Kiffe*, 361 S.W.3d at 108 (stating that circumstantial evidence is as probative as direct evidence in establishing guilt of actor and that it "can be sufficient" on its own "to establish guilt"). "A conviction may be based on the testimony of a single witness." *Santiago*, 425 S.W.3d at 443 (citing *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). And a certain type of evidence, such as forensic evidence, is not required when other evidence connects the defendant to the crime. *See Johnson v. State*, 176 S.W.3d 74, 77–78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (stating that lack of physical or forensic evidence was factor

for jury to consider in weighing evidence but holding that evidence was sufficient to sustain conviction).

Although there were inconsistencies in the eyewitnesses' testimony about their observations of what happened, the witnesses were uncertain about the occupants of the other vehicle, and Mendez's girlfriend admitted to being untruthful about certain things when speaking with the officers after the incident, the jury could have found credible her testimony that "at some point" during the incident, she observed Mendez pointing a gun at one of the people that had been yelling at him and her identification of Mendez as the man pointing the firearm at Thompson's vehicle in the cell phone image. *See Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020) (stating that factfinder is responsible for judging credibility of witnesses and "may find credible all, some, or none of the testimony that the witnesses give"). She answered, "[T]hat's Devin," when shown the cell phone image and answered, "Yes," when asked if she was "sure that that's Devin" and when asked if he appeared "to be holding a gun." She also answered, "Yes," when asked, "Is that the same Devin Mendez that's in court with us here today?"

Mendez's girlfriend also testified that she and Mendez were the only occupants of the Chrysler, that she was driving, that he got out of the Chrysler at Peterson Tire and then came back with a firearm and the Mercedes key telling her to "go" and "[d]on't stop," and that he threw the firearm out the window prior to the traffic stop. *See Santiago*, 425 S.W.3d at 444 ("[W]hen evaluating the sufficiency of evidence to establish aggravated robbery with a deadly weapon, guilt may be reasonably inferred when the defendant's actions, including flight, demonstrate a consciousness of guilt." (citing *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989))). Based on information she provided, the police were able to locate the firearm on

9

the side of the road on the route that the Chrysler had travelled after leaving Peterson Tire. Mowery testified that the firearm that the police recovered belonged to him, that it had been in his truck, and that it was in a different condition when it was returned to him. He agreed that it had gone through a traumatic experience and testified that it "had road rash on it" and "abrasions." A bag of marijuana was also recovered on the route that the Chrysler had travelled prior to the traffic stop, and a detective testified that Mendez's backpack contained marijuana "flakes." The photographs and video of the incident also showed the man, who was dressed in black and wearing a face mask, pointing the firearm at Thompson's vehicle, and Mendez was wearing black clothing and a face mask when the traffic stop was initiated. The jury was able to view the images and video of the man pointing the firearm and compare those images with the image of Mendez in the backseat of the police car after his arrest. The testimony of Martinez and Maloy further supported that the man who was pointing the firearm at Thompson's vehicle got into the Chrysler and that it then drove away,[4] and the police found the Mercedes key that was taken from Mowery's truck on the front passenger side of the Chrysler where Mendez was sitting when the officers initiated the traffic stop.

Viewing the evidence under the applicable standard of review, we conclude that it was legally sufficient to establish Mendez's identity as the man who committed aggravated robbery during the incident. *See Merritt*, 368 S.W.3d at 526 (stating that appellate court should consider combined and cumulative force of evidence and view evidence in light most favorable

---

[4] When asked if there was any doubt in his mind that the male who pointed a gun at Thompson got in the Chrysler, Maloy answered, "It has been a few years," but he also testified that he believed he had given a statement to that effect on the day of the incident and agreed that his statement on that day would have been the most accurate recollection "because it would have happened the day of." In her testimony, Martinez agreed that she did not know how many people were in the Chrysler, but she confirmed that she saw the male who was around the back of Thompson's vehicle in the video get into the Chrysler.

to jury's guilty verdict). Thus, we conclude that the evidence was legally sufficient to support Mendez's conviction for aggravated robbery and that the trial court did not err in denying Mendez's motion for a directed verdict. *Madden*, 799 S.W.2d at 686. We overrule his sole point of error.

## CONCLUSION

Having overruled Mendez's point of error, we affirm the trial court's judgments of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed: July 31, 2024

Do Not Publish