# Court of Appeals
## Tenth Appellate District of Texas

10-24-00218-CR
10-24-00219-CR
10-24-00220-CR

Shawn Allen,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
12th District Court of Madison County, Texas
Judge David W. Moorman, presiding
Trial Court Cause Nos. 21-13764, 21-13766, and 21-13816

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

After a bench trial, Shawn Allen was found guilty of one count of trafficking a child and two counts of sexual assault of a child. After Allen pleaded true to one prior felony conviction, the trial court assessed his punishment at life in prison on each count and sentenced him accordingly. Allen now appeals. We will affirm.

## A. Issue One, Two, and Three

In Allen's first three issues, he contends the evidence is insufficient to support each of his convictions.

### 1. Authority

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be

sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

2. Discussion

The charge of trafficking a child as indicted required the State to prove beyond a reasonable doubt that Allen knowingly "trafficked" a child, causing her to engage in or be a victim of sexual assault, prostitution, or compelling prostitution. *See* TEX. PENAL CODE ANN. § 20A.02(a)(7)(C), (E), (H). Section 20A.01(4) defines "traffic" as meaning to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4). The charges of sexual assault of a child as indicted in cause number 21-13766 required the State to prove beyond a reasonable doubt that Allen intentionally or knowingly caused the sexual organ of a child younger than seventeen years

of age to contact Allen's sexual organ and in cause number 21-13816 required the State to prove beyond a reasonable doubt that Allen intentionally and knowingly caused the penetration of the sexual organ of a child younger than seventeen years of age by Allen's sexual organ. *Id*. § 22.011(a)(2)(A), (C).

Allen contends that the deference afforded the "factfinder does not permit a reviewing court to abandon the obligation to determine whether the factfinder's resolution of conflicting evidence was a rational one." He argues that under a rigorous and proper application of the *Jackson v. Virgina* legal-sufficiency standard that the evidence supporting the conviction was so implausible and controverted that a factfinder could not rationally have given credit to it. Allen acknowledges that the victim's testimony, when viewed in isolation, could meet the elements of the offence of trafficking a child. However, he argues that a "sufficiency review requires review of all the evidence, and that evidence shows that a finding that [the victim's] testimony is sufficient to meet the beyond a reasonable doubt standard would not be rational." We look to the Texas Court of Criminal Appeals hypothetical in *Brooks v. State* to provide direction in assessing whether a finding is irrational. The hypothetical is as follows:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk

and disregard the video. But, based on all the evidence, the jury's finding of guilt is not a rational finding.

*Brooks v. State*, 323 S.W.3d 893, 907 (Tex. Crim. App. 2010).

Here, the victim (I.H.) testified that when she was fourteen years old, she and Allen were living in a trailer house with three other people. All of them were using methamphetamine on a daily basis. The three other occupants of the trailer house were Tammy, and her two sons Casey and Dewayne. I.H. explained that she was initially introduced to methamphetamine by Allen, and it was during this time that I.H. became addicted to methamphetamine and when the offenses occurred. I.H. testified that her social security benefits were regularly used to purchase methamphetamine initially, and when the social security benefits ended, Allen started taking her to other trailers in their trailer park to have sex with men for money and methamphetamine. I.H. detailed that she was scared of Allen and that he made her have sex with two men, later identified as Bud and Josh, on multiple occasions. I.H. said that Allen or Casey would accompany her when she went to the other trailers and that usually Allen would get the money and methamphetamine directly from the men. I.H. also detailed that Allen had sex with her in their trailer house during this time period and indicated it was on multiple occasions.

In Allen's brief, he directs us to trial testimony unfavorable to the victim relating to her attacking her sister, being admitted to mental health hospitals on multiple occasions, having a diagnosis of a mood disorder and oppositional defiance disorder, and telling lies. Further, Allen directs us to testimony of other witnesses that he believes contradicts and controverts I.H.'s testimony and renders it implausible. Allen contends that Casey, Dewayne, and Tammy, along with other witnesses who testified in the guilt/innocence phase of the trial, offered contradictory testimony and no factfinder could rationally find the elements of the offenses alleged against Allen were established beyond a reasonable doubt.

Allen contends that Casey's testimony contradicted I.H.'s testimony when Casey confirmed that he never saw Allen go to the trailer house that belonged to Bud and his family. The trial court could have believed Casey's testimony on this issue and also believed I.H.'s testimony that Allen had gone to Bud's trailer house with her. Casey did not make an assertion that he constantly watched Bud's trailer house to monitor who was coming and going, nor did Casey make an assertion that Allen never went to Bud's trailer house. Only that he never saw Allen go to Bud's trailer house.

Allen asserted that Casey's testimony that I.H. only left their trailer house two or three times controverts I.H.'s testimony. However, Casey's testimony was limited to the occasions when I.H. would leave alone. Casey

acknowledged that I.H. would leave with Allen and then return with money and methamphetamine. The trial court could have rationally believed both I.H.'s and Casey's testimony were not contradictory.

Allen asserted that I.H.'s testimony was controverted when Casey testified that he and I.H. went to visit the children living in Bud's trailer house. The reporter's record reflects the following testimony from I.H. while on cross-examination:

> [Defendant's Counsel]: Okay. And you mentioned earlier there may have been times that you went over there for other reasons. Did you -- let me say it this way: Did you ever go to Bud's house to see the kids or to do something else –
>
> [I.H.]: Yes.
>
> [Defendant's Counsel]: -- other than sex?
>
> [I.H.]: Yes.
>
> [Defendant's Counsel]: Okay. How many times did you go over there for that?
>
> [I.H.]: A couple. Me and Casey used to go over there and hang out with the kids and watch them for him and his wife, and we played video games with them and stuff. They were, like, young.

The trial court could have rationally believed Casey's testimony did not amount to a conflict or contradiction in their testimony.

Allen further contends that I.H.'s claim that Casey took her over to Josh's trailer was contradicted by Casey's denial that he ever took I.H. to a trailer for sex in exchange for methamphetamine or money. I.H. also testified

that Casey would be in the bedroom, or he would come in the bedroom while sexual things were happening between her and Allen. Casey testified that Allen did not allow him in Tammy's and Allen's bedroom and that the only people Casey knew for sure were having sex in the trailer house were he and I.H., and Allen and Tammy. The trial court could have rationally rejected Casey's denial and lack of knowledge about Allen having sex with I.H. because of the potential for criminal liability.

Allen also contends that Casey's testimony did not establish any element of the offense of trafficking, other than the element of transporting, and that it amounted to nothing more than speculation regarding the elements of the offense of trafficking. Allen argues that Casey's speculation on the elements of the offense of trafficking was negated by evidence that Allen took I.H. to the store to withdraw her social security income. However, I.H.'s testimony provided proof of all the elements of the offense of trafficking a child. In his brief, Allen conceded that I.H.'s testimony, when viewed in isolation, could meet the elements of the offense of trafficking a child. A conviction may be based on the testimony of a single witness. *Santiago v. State*, 425 S.W.3d 437, 443 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The trial court could have disregarded any speculative testimony and relied on the testimony of I.H.

Allen contends that Dewayne's testimony controverted I.H.'s claim that it was Allen who took her over to the neighbors' trailers where she would have

sex in return for methamphetamine and money. Dewayne testified that when I.H. would leave the home, she would be with Tammy, and it was Tammy and I.H. who would return after hours with money and methamphetamine. However, Dewayne also testified that I.H. left the trailer house sometimes accompanied by Tammy, or both Tammy and Allen, or just by herself and that I.H. and whoever had accompanied her, would return later with money and drugs. Dewayne did add that most of the time I.H. left with his mom, Tammy. The trial court could have rationally believed this testimony did not amount to a conflict or contradiction in the testimony.

Allen also asserts that Dewayne expressly denied that I.H. was ever "pimped out" while he lived at the trailer house, and that she never claimed he had done so. The portion of the record before us which was referenced by Allen in his brief reads:

> [Defendant's Counsel]: Well, then, what is all this evidence you're talking about about getting money?
>
> [Dewayne]: The suspiciousness of how [Allen] was moving with these females is what I'm talking about, sir.
>
> [Defendant's Counsel]: *Oh. So your testimony is that [the victim] was never pimped out to the neighbors while you were there?*
>
> [Dewayne]: *I didn't say all that. I said that's a possibility.*
>
> [Defendant's Counsel]: Just a second ago you said none of that happened while –
>
> [Dewayne]: While I was there.

[Defendant's Counsel]: That's what I am asking –

[Dewayne]: Never happened while I was in their house, sir.

[Defendant's Counsel]: – while you were there.

[Dewayne]: *Doesn't mean it never happened when I wasn't there, sir.*

(emphasis added). From the reporter's record, Dewayne's testimony does not appear to be as conclusive as Allen alleges in his brief, and Dewayne does not conclusively exclude the possibility that I.H. was ever trafficked, only that it did not occur while he was there. The trial court could have rationally believed this testimony did not amount to a significant conflict or contradiction in the testimony given Dewayne's acknowledgement that it "[d]oesn't mean it never happened . . ."

Allen contends that I.H.'s testimony was contradicted by Tammy's testimony that Tammy never saw I.H. leave the trailer with Allen, including taking her to any other trailer. Tammy confirmed that she did not see Allen walk I.H. to another trailer and force I.H. to have sex with other men. But later Tammy confirmed that she had no knowledge whether Allen did or did not take I.H. to other trailers in the neighborhood to sell her for sex. When Tammy was asked whether she had heard about I.H.'s allegation, she replied, "I have heard about them, but I can't say whether they happened or whether they didn't happen because I – I didn't see it with my eyes." Tammy testified

that Allen required her to stay in their bedroom in the trailer house and that she was not able to leave the bedroom unless Allen went with her. She stated that initially she believed it was just she and Allen living in the trailer house while she was confined to her bedroom until she heard the voices of Casey, Dewayne, and I.H. The trial court could have rationally believed this testimony did not amount to a conflict or contradiction in the testimony because of Tammy's inability to observe activities in the trailer house because of her confinement to her bedroom. Tammy was essentially saying that she did not see any abuse, but not seeing it and having no knowledge is not an assertion that it never happened. I.H. also testified that Tammy came in the bedroom while I.H. and Allen were nude and sexual things were happening between them. Tammy denied that she saw any sexual conduct between Allen and I.H. The trial court could have rationally rejected Tammy's denial because of the potential for criminal liability.

Allen contends I.H.'s testimony was contradicted by Allen's stepsister, Erika, who lived in the same trailer park. In Erika's testimony, she denied ever seeing I.H. walking around the trailer park and going to different trailers, other than seeing I.H. walking to her grandmother's trailer or Erika's trailer. Erika added that she never noticed anything else. The trial court could have rationally believed this testimony did not amount to a conflict or contradiction in the testimony because Erika was testifying about what she had observed,

she did not indicate she was constantly on the watch for people walking around the trailer park and never missed any activity there.

Allen also points to the testimony of an investigator with the Texas Attorney General's Office who said that, after speaking with I.H., he was able to develop leads on two potential suspected perpetrators in the trafficking charge, Josh and Bud, and that he was able to speak with Bud who did not admit to the criminal activity or make any inculpatory statements. The trial court could have rationally rejected the suspected perpetrator's denial to the investigator that he abused I.H. because of the potential for criminal prosecution. Moreover, Allen contends that the fact that I.H. could not identify the suspect in a photo lineup shown to her by the investigator after she indicated they had sex fifteen or twenty times makes her testimony so implausible that a factfinder could not rationally give credit to it. However, during the trial, it is notable that Casey testified that he could not remember Bud's face. The photo lineup was not admitted into evidence and was not before the trial court, nor is it in the record before us. The investigator that prepared the lineup stated that he "presented [I.H.] a photo lineup which contained six individuals similar in appearance" only leaving an impression that Bud was in fact in the lineup. The investigator was not questioned regarding whether the lineup was appropriately assembled or how much time had elapsed between the offenses and presentation of the lineup to I.H.

Without more information regarding the lineup, the trial court could have rationally disregarded I.H.'s failure to identify an individual in the lineup.

Allen argues that the State did not call any eyewitnesses to corroborate I.H.'s description of what occurred when she was sexually assaulted by the second offender identified as Josh. I.H.'s testimony on this specific detail was never controverted and the only two individuals that could corroborate I.H.'s testimony on this specific detail would have been present during the time she was sexually assaulted and would have been subject to potential criminal prosecution. Moreover, a conviction may be based on the testimony of a single witness. *Santiago*, 425 S.W.3d at 443.

Allen points to numerous inconsistencies in I.H.'s testimony with the testimony of the other witnesses. However, we conclude that the inconsistencies were not so significant that they rise to the level of establishing that it would have been irrational for the trial court to credit any part of her testimony. *See Braughton v. State*, 569 S.W.3d 592, 612 (Tex. Crim. App. 2018). The trial court was presented with testimony that Allen controlled the household, restricted the movement of others, and provided methamphetamine to all members of the household. The trial court could have rationally believed that the contradictions and inconsistencies grew out of all members of the household using methamphetamine daily and the potential for several of the witnesses to be in jeopardy of potential criminal prosecution. The trial court

was free to evaluate the witness's testimony and disregard the inconsistencies in the testimony that Allen now raises. *See id.* We overrule Allen's first three issues.

## B. Issue Four

In Allen's fourth issue, he complains that the trial court erred in admitting evidence of tattoos that were not relevant to any issue in the case and were unfairly prejudicial.

### 1. Authority

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). We will not reverse the trial court's decision except where there has been a clear abuse of discretion falling outside the zone of reasonable disagreement. *Id.* Even if a trial court improperly admitted evidence, reversal is warranted only if the appellant demonstrates that the erroneous admission affected his substantial rights. TEX. R. APP. P. 44.2(b); *Kibble v. State*, 340 S.W.3d 14, 20 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). An error affects a substantial right of the appellant when it has a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

To be admissible at trial, evidence must be relevant. TEX. R. EVID. 402. "Under Rule 401, evidence is relevant if it has any tendency to make a 'fact ...

of consequence in determining the action' more or less probable than it would be without the evidence." *Hall v. State*, 663 S.W.3d 15, 30–31 (Tex. Crim. App. 2021). "In other words, evidence "must satisfy two requirements to be considered relevant: first, materiality, and second, probativeness." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). "To be relevant, evidence must be both material—that is, it must be offered for a proposition that is of consequence to the determination of the case—and probative, such that it makes the existence of the fact more or less probable than it would otherwise be without the evidence." *Boudreaux v. State*, 631 S.W.3d 319, 332 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). The rules of evidence favor the admission of all logically relevant evidence for the jury's consideration. *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990). "Evidence does not need to prove or disprove a particular fact by itself to be relevant under this rule; it is sufficient if the evidence provides even a small nudge toward proving or disproving a fact of consequence." *Hall*, 663 S.W.3d at 31. However, the evidence is inadmissible if it fails to meet this threshold standard. *Id*.

2. Discussion

During the trial, the State offered twenty-four photos depicting tattoos covering Allen's body. After the State's offer was made the following transpired:

[Defendant's Counsel]: Judge, unless the State can establish the relevance of the photos of my client and the body art he has, I don't see the relevance of these photos for the decision-making process you're going to be in.

[State's Attorney]: I think you will see the relevance of this ties into the victim's tattoos and how they are related and how the reasoning for his -- their tattoos and how that is connected.

[Defendant's Counsel]: Judge, if there are similar or same tattoos on Mr. Allen that are on the victim, then I might could see the relevance of that tattoo of him coming into evidence. But we have got every tattoo on his body in those photos.

[State's Attorney]: And to clarify, Judge, Officer Kishino is not testifying to these. Just that he took these photos.

[Defendant's Counsel]: That has nothing to do with the relevance of their -- that they have to this case or lack thereof.

The Court: Overruled. State's 7 through 30 are admitted.

The trial court had admitted State's exhibits 36 and 34 during I.H.'s testimony. Both exhibits are photos of I.H.'s lower legs that show tattoos on both her left and right leg. On her left leg is a tattoo of the name "Allen" and on her right leg is a vertical tattoo of the number "5150" and horizontally crossing the "1" is a tattoo of the number "212."

The State contends that Allen's tattoos were needed for the purpose of corroborating the trafficking offense, along with I.H.'s and Casey's testimony that Allen gave the victim tattoos. The State points to both Allen and I.H. each having a tattoo of the name "Allen" in a similar style. The State presented testimony from Sergeant Cora Flippo with the Texas Attorney General's

human-trafficking unit on the use of tattoos by traffickers. Flippo testified that tattoos were used by traffickers as a form of branding to show ownership over victims. Flippo explained that tattoos are considered to be permanent labeling of victims and often feature the trafficker's name, a nickname, slang term, or a reference to gang affiliation. Flippo found similarities between the "Allen" tattoos on Allen and I.H., specifically the similar handwriting. It was Flippo's opinion that the "Allen" tattoo on the victim is consistent with the kind of branding encountered in trafficking cases. Flippo, after examining State's Exhibits seven through thirty, was of the opinion Allen was associated with the Aryan Brotherhood because of multiple tattoos found on Allen that are commonly used by members of the Aryan Brotherhood. Flippo indicated that Allen's gang association was relevant to Flippo's interpretation of the tattoos "5150" and "212" on I.H. and explained that the numeric tattoos are used by the Aryan Brotherhood as an indicator of membership, loyalty, and unity.

Here, the photos of Allen's tattoos, in conjunction with Sergeant Flippo's testimony, were relevant to prove Allen's intent and that I.H. was trafficked, all which was clearly a proposition of consequence to the determination of the case and made the existence of the above facts more probable than it would otherwise be without the photographic evidence. *See Boudreaux v. State*, 631 S.W.3d at 332. At a minimum, the photographic evidence provided a small

nudge toward proving or disproving a fact of consequence. *See Hall*, 663 S.W. 3d at 31.

We conclude the photographic evidence of Allen's tattoos satisfied the two requirements to be relevant; materiality and probativeness. *See Cooper v. State*, 95 S.W.3d 488, 490–91 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).

We decline to address Allen's complaint on appeal that the tattoo evidence was unfairly prejudicial because he did not raise a separate trial objection to the tattoo evidence based upon Rule 403, thus this issue is not properly presented for our review. *See Bell v. State*, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996).

We overrule Allen's fourth issue.

C. Conclusion

We affirm the judgments of the trial court.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  August 28, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do Not Publish
CRPM

